UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEPHANIE CLARK,

          Plaintiff,

    v.                                        Case No. 20-CV-1363

KILOLO KIJAKAZI,
Commissioner of the Social Security Administration,

          Defendant.[1]

## DECISION AND ORDER

**1. Introduction**

Alleging that she has been disabled since 2015 (Tr. 18), plaintiff Stephanie Clark seeks disability insurance benefits. After her application was denied initially (Tr. 18) and upon reconsideration (Tr. 18), a hearing was held before Administrative Law Judge (ALJ) Kimberly Cromer on October 8, 2019 (Tr. 18). On December 9, 2019, the ALJ issued a written decision concluding that Clark was not disabled. (Tr. 31.) After the Appeals Council denied Clark's request for review on June 4, 2020 (Tr. 6), she filed this action. All

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 8), and the matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Clark "has not engaged in substantial gainful activity since January 1, 2015, the amended onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*)." (Tr. 21.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Clark has the following severe impairments: "ADD/ADHD, depression, panic disorder with agoraphobia, overweight, asthma, chronic pain of the left knee status post ACL reconstruction with knee brace, and hypoparathyroidism (20 CFR 404.1520(c) and 416.920 (c))." (Tr. 21.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or

medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Clark's impairments did not meet or medically equal a listing impairment. (Tr. 21.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Clark has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders, ropes or scaffolds, could occasionally balance, stoop, crouch, kneel but never crawl. She can do no work at unprotected heights or work around hazardous machinery and no commercial driving. She can do occasion [sic] operation of foot controls with the left lower extremity. She should avoid concentrated exposure to extreme cold, heat, humidity, wetness, and pulmonary irritants. She should avoid concentrated exposure to vibration; work on a flat, even surface. The claimant can perform simple, routine work with no work with the general public as part of routine job duties with occasional interaction with co-workers and supervisors. She cannot perform fast-paced production such as assembly line or work where machine sets the pace. She is capable of work is [sic] of a variable rate and only occasional changes in the work

setting. She can have no strict production, hourly requirement; end of the day work goals and no tandem work.

(Tr. 24.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Clark "is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)." (Tr. 30.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step, the ALJ concluded that there were jobs that Clark could perform, including mail sorter (Dictionary of Occupational Titles (DOT) Number 209.687-026); inspector hand packager (DOT Number 559.687-074) and labeler (DOT Number 920.687-126). (Tr. 31.) Therefore, Clark was not disabled. (Tr. 32.)

3. **Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v.*

*Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

4. Analysis

   4.1 Clark's Obesity

Clark argues that the ALJ erred by failing to explain how she considered Clark's obesity in combination with her other impairments. (ECF No. 24 at 10.) She argues that this error was "not harmless" because "obesity is a known comorbidity with depression" and the ALJ "ignored the increasing mental health difficulties imposed by obesity that are consistent with the record." (*Id.* at 15.) The Commissioner responds that the ALJ "adequately considered the limiting effects of [Clark's] obesity combined with her other impairments and reasonably concluded she could perform a reduced range of light, unskilled work." (ECF No. 30 at 18.) And even if "the ALJ erred in evaluating obesity, any error is harmless because [Clark] has not pointed to evidence showing how obesity exacerbated her impairments." (*Id.* at 23.)

An ALJ must consider the impact of a claimant's obesity when evaluating the severity of her other impairments. *Stephens v. Berryhill*, 888 F.3d 323, 328 (7th Cir. 2018) (citing *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016)). "The combined effect(s) of obesity with other impairments may be worse than those same impairments without the addition of obesity." *Id*. "The ALJ must specifically address the effect of obesity on a claimant's limitations because, for example, a person who is obese and arthritic may experience greater limitations than a person who is only arthritic." *Villlano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The ALJ twice connected Clark's obesity to specific limitations in her RFC. She explained that she

> has considered [Clark's] condition and limited her to light level work with postural limitations so as to not exacerbate symptoms. A light exertional level with postural limitations also considers the claimant's chronic knee pain and overweight status. It is reasonable to expect that a greater exertional level could place undue pressure on the claimant's knee, which could exacerbate her pain. Her overweight status could limit her mobility and tolerance for exertional activity, as additional weight would place pressure on her joints and body system.

(Tr. 26.) She also said:

> In addition the undersigned provided that the claimant can never climb ladders, ropes or scaffolds, could occasionally balance, stoop, crouch, kneel but never crawl. She can do no work at unprotected heights or work around hazardous machinery and no commercial driving. She can do occasion operation of foot controls with the left lower extremity. These additional restrictions take into account her overweight status and chronic knee pain as well as the claimant's subjective allegations of fatigue.

6
Case 1:20-cv-01363-WED   Filed 12/14/21   Page 6 of 9   Document 36

(Tr. 27.) Therefore, the ALJ specifically addressed the effect of Clark's obesity on her physical limitations.

But Clark also argues that the ALJ failed to address the effect of Clark's obesity on her *mental* limitations. (*See, e.g.*, ECF No. 24 at 15-16; ECF No. 35 at 8-9.) Indeed, SSR 19-2p requires that the ALJ consider the effect of a claimant's obesity on her mental limitations. *See* SSR 19-2p(4). The Ruling acknowledges that "obesity increases the risk of developing impairments including … mental impairments (for example, depression)." SSR 19-2p(2). The ALJ noted that Clark "testified that she was 5 feet 2 inches tall and her weight was 180 pounds because of her depression," but otherwise did not reference Clark's obesity in connection with her mental impairments. (Tr. 26.) Therefore, the ALJ erred in failing to specifically address the effects of Clark's obesity on her mental limitations. *Villlano*, 556 F.3d at 562.

However, Clark does not explain how her obesity—in combination with either her physical or mental impairments—impacts her ability to work. She suggests that the ALJ "overstated [her] mental health capabilities as a result of not considering [her] obesity in combination with her mental health," but does not explain how that overstatement was reflected in the ALJ's RFC determination, for example. Without more, the ALJ's error in failing to specifically address the effects of Clark's obesity on her mental limitations is harmless. *See Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) ("An ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how

7
Case 1:20-cv-01363-WED    Filed 12/14/21    Page 7 of 9    Document 36

her obesity hampers her ability to work." (quoting *Dornseif v. Astrue*, 499 Fed. Appx. 598, 600 (7th Cir. 2013))).

**4.2 The Social Security Administration's Structure**

Clark argues that the Social Security Administration's structure is unconstitutional because the Commissioner serves a specific term and may only be removed for cause. (ECF No. 24 at 18 (discussing *Seila Law v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020) and analogizing the Social Security Administration's structure to that of the Consumer Financial Protection Bureau).) This means that the Commissioner has "exactly the type of unchecked power that *Seila Law* found unconstitutional." (*Id.* at 20.) And "the use of these unchecked powers causes significant potential harm to SSA claimants because the determinations of the rules and regulations cannot be questioned, nor can they be affected by the electorate through the ballot box." (*Id.* at 20-21.) Indeed, it caused Clark harm for several reasons, including because she "received an unfavorable decision from this constitutionally illicit ALJ adjudication process." (ECF No. 35 at 12.)

The Commissioner agrees that the Social Security Administration's structure is unconstitutional (ECF No. 30 at 4 (citing 42 U.S.C. 902(a)(3))) but maintains that its unconstitutional structure is irrelevant because "the ALJ who denied [Clark's] claim was not appointed by a Commissioner subject to Section 902(a)(3)'s removal restriction." (*Id.* at 4). Moreover, "even if the deciding ALJ had been appointed by a tenure-protected Commissioner," Clark "would also need to show that Section 902(a)(3)'s removal

8
Case 1:20-cv-01363-WED   Filed 12/14/21   Page 8 of 9   Document 36

restriction caused the denial of her benefits claim." (*Id.* at 5.) Clark is not entitled to a new hearing because she cannot make such a showing. (*Id.*)

Assuming the Social Security Administration's structure is unconstitutional, to be entitled to relief Clark must show that the Administration's structure "inflicted compensable harm." *Collins v. Yellen*, 141 S. Ct. 1761, 1788 (2021). *See also Brand v. Kijakazi*, No. 2:20-CV-02219-NJK, 2021 WL 5868131, at *5 (D. Nev. Dec. 10, 2021*); Eugene R. v. Acting Comm'r of Soc. Sec.*, No. 3:20-CV-6052-TLF, 2021 WL 5769402, at *7 (W.D. Wash. Dec. 6, 2021); *Frank W. v. Kijakazi*, No. 20CV1439-KSC, 2021 WL 5505883, at *4 (S.D. Cal. Nov. 24, 2021). But, as explained above, the ALJ's error in failing to specifically address the effects of Clark's obesity on her mental limitations is harmless. Therefore, Clark did not suffer "compensable harm" and is not entitled to relief on her constitutional claim. As a result, the court need not reach the entirety of that claim, and the decision of the Commissioner is affirmed.

**5. Conclusion**

For the reasons stated above, the decision of the Commissioner is affirmed.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 14th day of December, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate